**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ABIRA MEDICAL LABORATORIES, LLC, d/b/a GENESIS DIAGNOSTICS,** **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **KAISER FOUNDATION HEALTH PLAN OF THE MID-ATLANTIC STATES, INC., Defendant.** | **NO.  24-CV-759** |

## MEMORANDUM OPINION

Plaintiff Abira Medical Laboratories, LLC, doing business as Genesis Diagnostics ("Genesis"), performed laboratory testing on specimens taken from patients insured by Defendant Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser").  Genesis alleges that doctors forwarded lab-testing requisitions to it on behalf of the Kaiser-insured patients, and that those requisitions assigned the insured patients' benefits—payment by Kaiser and the right to sue Kaiser in the event of Kaiser's nonpayment—to Genesis.  As a result of that alleged assignment of benefits, Genesis alleges that although Kaiser owes Genesis payment for the lab testing Genesis performed, Kaiser has "either failed to pay . . . or grossly underpaid" Genesis for the tests it performed, to the tune of $419,356.

Genesis has sued Kaiser.  It styled its claims as: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligent misrepresentation, and equitable and promissory estoppel; and, (4) quantum meruit/unjust enrichment.  Kaiser now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).  For the reasons explained below, Kaiser's Motion will be granted in part and denied in part.

1

## I.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  The complaint is construed "in the light most favorable to the plaintiff" to determine "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The Court "tak[es] note of the elements [that] must [be] pled to state a claim[,]" *Oakwood Lab'ys LLC v. Thanom*, 999 F.3d 892, 904 (3d Cir. 2021) (quotation omitted) (alteration in original) then—taking all non-conclusory well-pleaded facts as true—determines whether those facts state a "plausible claim for relief." *Fowler*, 578 F.3d at 210-11.

## II.   DISCUSSION

### A.  Count I: Breach of Contract

Breach of contract is the heart of Genesis' claims.  It alleges that doctors sent it samples from Kaiser members for testing, and when they did, they also sent requisitions that included assignments of certain contractual benefits—including the right to certain payments that Genesis alleges Kaiser never made.

In Pennsylvania, a breach of contract plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and, (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003).  It is clear

Genesis has adequately pleaded damages directly related to the alleged breach: It says it performed services worth $419,356 but never received payment. *See Anderson v. Brown & Brown of Lehigh Valley, LP*, 258 A.3d 488 (Pa. Super. 2021) ("In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss.")

The focus (and the main thrust of Kaiser's argument in favor of dismissing Genesis' breach of contract claim), then, is whether Genesis has adequately pleaded existence and breach. Genesis avers that each sample came with a requisition that included a transfer of the right to be paid by Kaiser for the testing performed. Genesis claims that, therefore, the requisitions "create[ed] an assignment of contractual rights from the patients in favor of [Genesis]." Genesis further alleges that it "performed all obligations that arose under those Contract(s)," including "rendering Laboratory Testing Services upon the specimens submitted by Defendant's agents, and thereafter properly submitting claims for payment to the Defendant." But instead of paying, Genesis alleges, Kaiser "fail[ed] to respond at all" to many claims and "regularly refus[ed] to pay" or "underpa[id]" Genesis for "groundless" reasons. Thus, Genesis claims, Kaiser has breached the contract (or contracts) created by the patients' assignments of benefits.

In opposition Kaiser argues that Genesis's Complaint does not include sufficient facts to show that a contract existed. (And therefore, by implication, Kaiser argues there was no breach since a contract cannot be breached if it does not exist). The essence of Kaiser's existence argument is that Genesis has not adequately pleaded that it "received a valid assignment of benefits from anyone." Kaiser argues that, for instance, Genesis "has not included any specific language contained in the alleged requisitions or assignments," or "attached copies of such documents" to its complaint.

3

Genesis' allegations must be "interpreted in the light most favorable to [it], and all inferences must be drawn in favor of [it]." *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009). Genesis alleges that it performed testing for each of roughly 500 Kaiser members, and that Kaiser under-reimbursed it for each. It attached to its complaint a spreadsheet alleging the date, amount of money billed, and accession number (unique identifier) for each test.

It alleges further that for each test it performed, it received a "requisition[] for laboratory testing services" in which each patient "executed an assignment of benefits with respect to their original requisitions for services." These documents, Genesis alleges, formed the basis of Genesis' contractual relationship with Kaiser, because the documents purported to assign the benefit of payment by Kaiser to Genesis. Genesis alleges that it performed all the requisitioned tests in exchange for the promise of that assigned payment.

A party can generally assign its rights and duties under a contract to an assignee, and "[w]here an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights," including the right to any payment under the assigned contract and the right to sue for any breach. *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167, 1172 (Pa. Super. 1997). Genesis avers that it received requisition documents containing assignments of benefits for each of the nearly 500 accession numbers it catalogued in the attachment to its complaint. It avers that each sample was taken from a Kaiser member, and that it performed the requisitioned "clinical laboratory, pharmacy, genetics, addiction[-]rehabilitation, and COVID-19 testing" on the samples. In short, Genesis has provided enough to "raise a reasonable expectation that discovery will reveal evidence" regarding a contractual relationship between it and Kaiser in the form of assignments of benefits from Kaiser's insureds, Kaiser's payment or nonpayment pursuant to those assignments, and any breach in Kaiser's failure to pay the full amount it owed.

4

*See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556) (quotations removed).

Kaiser cites several cases to support the proposition that its Motion must be granted because Genesis did not include specific language or attachments regarding the alleged assignments.  None is binding on this Court, and each deals only with standing requirements under Section 502 of the Employee Retirement Income Security Act (ERISA).[1]  But assignee standing under that statute is a matter of "federal common law,"  *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015), and neither party argues federal ERISA law ought to govern Genesis' Pennsylvania state-law contract claim.  Even less apt is Kaiser's argument that Genesis "cannot avoid attaching [the assignments] to the complaint to evade dismissal."  For support it cites *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  That is not what *Burlington* says.  *Burlington* explains that a court *may consider* an integral document extraneous to a pleading when a defendant attaches it to its Motion to Dismiss.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

Accordingly, Kaiser's Motion will be denied as to Genesis' breach of contract claim.

### B.  Count II: Breach of Implied Covenant of Good Faith and Fair Dealing

Kaiser next moves to dismiss Genesis' second claim: that "[e]very contract in Pennsylvania imposes upon each party a duty of good faith and fair dealing," and Kaiser's "groundless" failure to pay it breached that duty (also referred to as the implied covenant) "with

---

[1] Kaiser cites a host of ERISA cases from the District of New Jersey: *Dual Diagnosis Treatment Ctr., Inc. v. Horizon Blue Cross Blue Shield of New Jersey*, 2022 WL 1156760 (D.N.J. Apr. 19, 2022); *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017); *Professional Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, 2015 WL 4387981, at *1 (D.N.J. July 15, 2015); and *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 979 F. Supp.2d 513, 522 (D.N.J. 2013).

respect to the contractual obligations that arose" as to certain Kaiser members.  Specifically, Genesis alleges that Kaiser "fail[ed] and/or refus[ed] to respond to" some claims and "regularly refuse[ed] to pay and/or underpa[id]" others, for "groundless" reasons, and these allegedly bad-faith failures to pay constituted a breach of the covenant.

In its Motion, Kaiser urges that the implied covenant of good faith and fair dealing "does not exist under Pennsylvania law," so Genesis cannot maintain a claim under it.  In response Genesis concedes that the covenant is implicit—it notes that "the law will imply . . . a promise to do an act necessary to carry out the contract"—but it maintains that Kaiser's alleged breach of the covenant constitutes a standalone claim.

Each party is half right.  The covenant does exist, but in Pennsylvania it does not form the basis for a standalone claim—instead (as Genesis acknowledges) it is implied in the obligations imposed by every contract.  *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1261 (Pa. Super. 2017) ("Pennsylvania does not recognize an independent cause of action for breach of a covenant of good faith and fair dealing"); *see also Hanaway v. Parkesburg Grp., LP*, 132 A.3d 461, 471 (Pa. Super. 2015), *aff'd in part, rev'd in part on other grounds*, 168 A.3d 146 (Pa. 2017) [2] ("The implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties.").  The doctrine creates no duties additional to the contract.  Instead, it "serve[s] to imply terms that the parties would have spelled

---

[2] In *Hanaway v. Parkesburg Group, LP*, 168 A.3d 146 (Pa. 2017), the Pennsylvania Supreme Court held, largely on statutory grounds, that the duty of good faith and fair dealing did not apply to limited-partnership agreements formed under a previous version of Pennsylvania's Revised Uniform Limited Partnership Act.  It did not disturb any other earlier holdings regarding the duty.  In fact, it noted that the Pennsylvania General Assembly "intentionally imposed an affirmative good faith requirement upon parties to commercial contracts" that "directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced," but "does not create a separate duty of fairness and reasonableness which can be independently breached."  *Hanaway*, 168 A.3d at 157.

out had they foreseen their need," such that "a breach of such implied terms is equivalent to a breach of any other provision in the contract." *John B. Conomos, Inc. v. Sun Co. (R&M)*, 831 A.2d 696, 708 (Pa. 2003).

In any case, Genesis' recital in support of its "claim" for breach of the duty of good faith and fair dealing adds no new facts beyond those supporting its breach of contract claim. As discussed above, Genesis has adequately pleaded breach of contract. There is no separate claim under the duty of good faith and fair dealing available to it. Accordingly, to the extent Genesis pleads breach of the covenant of good faith as a standalone count, it will be dismissed, with the caveat that Genesis's allegations regarding the covenant are incorporated into its breach of contract claim.

### C. Count III: Negligent misrepresentation; Equitable and Promissory Estoppel

Kaiser next moves to dismiss Genesis' third count, which it styles as a combination of three elements: one tort claim (negligent misrepresentation) and two doctrines (equitable estoppel and promissory estoppel).[3]

### i. *Negligent misrepresentation*

Genesis claims that Kaiser negligently made a false representation by virtue of its

---

[3] Kaiser makes an initial formal argument: that this Count should be dismissed because it is a "shotgun pleading," against which Kaiser says the Third Circuit has "an established policy." Kaiser argues that shotgun pleadings include those that do not "separate[e] into a different count each cause of action or claim for relief." It cites *Fuhrman v. Mawyer*, 2023 WL 5672314 (M.D. Pa. Sept. 1, 2023), which itself cites *Hynson By & Through Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 (3d Cir. 1988), and *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). These cases are primarily concerned with intelligibility and fair notice to defendants: For instance, in *Fuhrman v. Mawyer*, the complaint was 297 dense pages. As the court in *Fuhrman* put it, "district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations." *Fuhrman*, 2023 WL 5672314, at *4 (M.D. Pa. Sept. 1, 2023) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011)). The complaint in this case does not nearly approach the degree of apparent ackamarackus of the *Fuhrman* complaint—it is just 49 paragraphs. It is easily separable into its components for analysis.

conduct.  It claims that when Kaiser paid "a number of claims," it effectively "represent[ed]" to Genesis that it would continue to pay further claims.  That alleged representation, Genesis claims, was false.

In Pennsylvania, maintaining a claim for negligent misrepresentation requires showing: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005).

Genesis alleges it submitted "hundreds of claims" to Kaiser over "the course of several years" regarding "Laboratory Testing Services" rendered.  It further alleges that Kaiser paid many of them.  That raises the heart of Genesis' negligent misrepresentation claim: that by paying many of the claims, Genesis engaged in a "course of conduct" that "constituted a representation" to Genesis that Kaiser "would continue to pay for Laboratory Testing Services rendered by [Genesis]."  Genesis claims it "relied upon" that representation, and then Kaiser showed that the representation was false when it "demonstrated that it did not intend to reimburse" Genesis.  Kaiser's failure to pay certain claims, Genesis says, "is the very nature of misrepresentation."  Genesis alleges Kaiser "has proximately caused damages" to it.

Kaiser raises two arguments in opposition: First, that Genesis' negligent misrepresentation claim cannot proceed because "a claim of negligent misrepresentation cannot be based on a false promise of future conduct"; second, that Genesis has not averred enough

facts to state a claim for negligent misrepresentation.[4,5]  As will be explained below, Kaiser's

first argument—that negligent misrepresentation cannot arise from a broken promise—disposes

of the claim.

In support of its argument that broken promises cannot constitute negligent

misrepresentation, Kaiser primarily cites *Yellovich v. Ahold USA*, 2014 WL 6676494 (E.D. Pa.

Nov. 24, 2014).  In *Yellovich* the court considered whether the eventual failure to fulfill a

previous promise of future action could constitute negligent misrepresentation and concluded

that it could not.  But Pennsylvania law, not federal law, controls,[6] and *Yellovich* found that

"Pennsylvania law [wa]s not perfectly settled" on the issue.  "In the absence of a controlling

decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law

must predict how Pennsylvania's highest court would decide this case."  *Berrier v. Simplicity*

*Mfg., Inc.*, 563 F.3d 38, 45-46 (3d Cir. 2009).

There is good reason to conclude that Pennsylvania law does not support a claim for

---

[4] Kaiser also gestures in passing at a third argument:  In a footnote it suggests that Genesis' negligent misrepresentation claim may be barred by the gist of the action doctrine and the economic loss doctrine (which prohibit contract claims disguised as tort claims), "[t]o the extent [Genesis'] negligent misrepresentation claim relies on the purported contractual relationship between Kaiser and [Genesis]."  Because Kaiser has not squarely raised this argument in the body of its brief, it will not be addressed.  *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.")

[5] Kaiser argues that a heightened pleading standard should apply to Genesis' negligent misrepresentation claim. "Some courts in this Circuit," Kaiser contends, "have held that the heightened pleading requirement found in Federal Rule of Civil Procedure 9 applies to negligent misrepresentation claims."  Under Rule 9, a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Kaiser cites *Ferra Auto. Servs., Inc. v. B&T Express, Inc.*, 2020 WL 6545999, at *5 (W.D. Pa. Nov. 7, 2020), for the proposition that the Rule 9 standard "applies to negligent misrepresentation claims."  But *Ferra Automotive Services* does not say the Rule 9 standard applies *generally* to negligent misrepresentation claims—it says it applies *when the negligent misrepresentation claim also alleges fraud*.  Here, Genesis does not allege fraud, so Rule 9 does not apply.

[6] Federal courts sitting in diversity apply state substantive law.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

future-promise negligent misrepresentation.  First, there is broad consensus among other states.

Indeed, the *Yellovich* court surveyed the law of several other states that preclude such a claim

and concluded that it "s[aw] no reason to depart from the overwhelming majority of jurisdictions

that do not allow claims for negligent misrepresentation to be based on false promises of future

conduct."  *Yellovich*, 2014 WL 6676494 (E.D. Pa. Nov. 24, 2014), at *3.[7, 8]

     Second, Pennsylvania courts have considered a related question: whether an unfulfilled

---

[7] The *Yellovich* court cites *PCR Contractors, Inc. v. Danial,* 354 S.W.3d 610, 617-18 (Ky. App. 2011); *Gay v. City of Wichita Falls,* 2014 WL 3939141, at *6 (Tx. App. Aug. 13, 2014).  It notes that "[a] small minority of courts have found otherwise," for instance, *Kimmell v. Schaefer,* 224 A.D.2d 217, 218, (N.Y. App. Div. 1996), but concludes that "the 'great weight of authority' supports the position taken by this District in [*Jones v. ]Flaster/Greenberg*." *Yellovich*, 2014 WL 6676494, at *3 (citing *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20-21 & 21 n.1 (2d Cir. 2000); *Jones v. Flaster/Greenberg P.C.*, 2013 WL 6846916, at *8 (E.D. Pa. Dec. 30, 2013) ("[A]n allegation that a defendant eventually failed to complete a promise is insufficient to support a claim for negligent misrepresentation.").

And as the Second Circuit noted in *Hydro Investors, Inc.*, even *Kimmell* does not really support the general proposition that promises to perform can constitute negligent misrepresentations.  *Kimmell* "dealt with projections . . . calculated based on known and existing utility rates that the defendant applied incorrectly."  (In other words, any projected representation was grounded in facts about the past that existed in the present, not purely futural promises.)  In any case, *Kimmell* did not squarely address the issue.  The problem in *Kimmell* was "whether the relationship between the defendant and plaintiff would support a negligent misrepresentation claim," not "whether the alleged statements qualified as representations of existing fact or future promises."  *Hydro Invs., Inc.*, 227 F.3d at 21 n.1 (2d Cir. 2000).

[8] Although the Restatement (Second) of Torts concerning negligent misrepresentation (Section 552) does not itself squarely answer the question, many of the cases it cites from around the country do address it, and the consensus against future-promise negligent misrepresentation claims is overwhelming.  RESTATEMENT (Second) OF TORTS, § 552.  *See, e.g.*, *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992) ("Most jurisdictions that recognize a cause of action for negligent misrepresentation do not apply it to promises of future conduct."); *High Country Movin', Inc. v. U.S. W. Direct Co.*, 839 P.2d 469, 471 (Colo. App. 1992) ("[A] claim of negligent misrepresentation cannot be based solely on the nonperformance of a promise to do something at a future time."); *Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149, 1165 (Kan. 2000) ("The tort of negligent misrepresentation . . . does not, by its terms, apply to misrepresentation of an intention to perform an agreement [or] to statements of future intent."); *Bank of Shaw, a Branch of Grenada Bank v. Posey*, 573 So.2d 1355, 1360 (Miss. 1990) ("It is well settled law that, except in cases of fraud, the first element of the tort of negligent misrepresentation must involve a representation concerning a past or present fact."); *Bayer v. PAL Newcomb Partners*, 643 N.W.2d 409, 413 (S.D. 2002) ("Generally, representations as to future events are not actionable and negligent misrepresentations . . . must be of past or existing facts."); *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1219 (Wash. App. 2002) ("[F]ailure to perform [as to] promises alone cannot establish the requisite negligence for negligent misrepresentation.  A false representation as to a presently existing fact is a prerequisite to a misrepresentation claim."); *Birt v. Wells Fargo Home Mortg., Inc.*, 75 P.3d 640, 657-58 (Wyo. 2003) ("[N]egligent misrepresentation does not apply to misrepresentations of future intent.")

promise can create a claim for *fraudulent* misrepresentation.  They have long held it cannot.  *See,*
*e.g.*, *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 290 (Pa. Super.
2010) ("It is well-established that the breach of a promise to do something in the future is not
actionable in fraud"); *McCreary v. Edwards*, 172 A. 166, 168 (Pa. Super. 1934) ("the mere
failure to carry out a promise of something to be done in the future is not itself evidence of
fraud").

Finally, Pennsylvania courts' discussions of the nature of negligent misrepresentation
suggest no reason to defy the consensus as to promises to perform.  For instance, as the
Pennsylvania Supreme Court recently explained, negligent misrepresentation "must concern a
material fact and the speaker . . . *must have failed to make a reasonable investigation of the truth*
*of these words*."  *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021) (quoting *Bortz v.*
*Noon*, 729 A.2d 555, 561 (Pa. 1999)) (emphasis added); *see also Gongloff Contracting, L.L.C. v.*
*L. Robert Kimball & Assocs., Architects & Engineers, Inc.*, 119 A.3d 1070, 1076
(Pa. Super. 2015).  To hold that a purely futural promise can constitute negligent
misrepresentation, therefore, would be to require parties to "investigat[e ]the truth of" a future
state of affairs.  But courts cannot require parties to investigate things that have not yet
happened—the "reasonable investigation" requirement is inherently bound to present facts.[9]

---

[9] The problem of the "truth" or "falsity" of a future-contingent statement has long vexed logicians and lawyers alike.
Genesis' negligent misrepresentation raises a basic problem for the problem of future-tense "misrepresentations":
Normally truth and falsity are determined by reference to facts known at the time of the determination—so what
does it mean to say that a proposition is "true" or "false" if it is about something that has not happened yet?  Others
have suggested that a future statement may be true or false, but its truth or falsity cannot be determined at the time of
utterance.  *See* Per Hasle and Peter Øhrstrøm, "Future Contingents", *The Stanford Encyclopedia of Philosophy*
(Summer 2020, Edward N. Zalta, ed.), https://plato.stanford.edu/archives/sum2020/ entries/future-contingents/
("Some logicians have held that no future contingent is true.  However, other logicians have found that this is
unacceptable. . . . Already Aristotle (384-322 B.C.E.) was aware of the problem of future contingents.")

There is no reason to decide against the wide consensus of other states or the logical entailments of Pennsylvania negligent misrepresentation jurisprudence:  A broken promise is not enough to sustain a negligent misrepresentation claim.

Kaiser's Motion will therefore be granted as to Genesis' negligent misrepresentation claim, which will be dismissed with prejudice in that it relies on "misrepresentations" of a future promise.[10]

### ii.    *Equitable estoppel and Promissory Estoppel*

As noted above, Genesis' lumps together its putative equitable estoppel and promissory estoppel claims with those for negligent misrepresentation.  The essence of both of its estoppel claims seems to be that Kaiser, "by virtue of its . . . pay[ment] on a number of claims submitted by [Genesis]," represented to Genesis that Kaiser "would continue to pay" for other claims; that Genesis "reasonabl[y] and justify[ably]" relied on Kaiser's "representations"; and that now Kaiser must be "precluded from repudiating its payment and other contractual obligations because to do so would be violative of the demands of justice and good conscience."  Each estoppel claim will be evaluated in turn.

### a.   Equitable estoppel

Equitable estoppel "prevent[s] a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken."  *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 504 (Pa. 1983).  As Kaiser correctly notes, equitable estoppel is not a standalone cause of action—it is a "doctrine," and it is "wholly defensive."  *Peluso v.*

---

[10] Although dismissal of claims should generally be without prejudice, they may be dismissed with prejudice when no amendment could state a claim under the applicable law.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

*Kistner*, 970 A.2d 530, 533 (Pa. Commw. 2009).   It is targeted towards the repudiation of a particular set of facts: it "arises when a party . . . induces another to believe *that certain facts exist* and that party relies on such belief to his prejudice if the former is permitted to deny the existence of such facts."  *In re Appeal of Cleft of the Rock Ministries*, 2014 WL 2527536, at *4 (Pa. Commw. June 3, 2014) (emphasis added).  An equitably estopped party may not "repudiate" its prior representation as to those certain facts.  *Zitelli v. Dermatology Educ. & Rsch. Found.*, 633 A.2d 134, 139 (Pa. 1993).  In short, "the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist."  *Id.  Novelty Knitting Mills, Inc.*, 457 A.2d at 504.

Here, as noted above, Genesis claims Kaiser has repudiated "its payment and other contractual obligations" and "demonstrated that it did not intend to reimburse Genesis."  But these averments, even if taken as true, do not support an equitable estoppel claim, which (like a claim for negligent misrepresentation) cannot "sustain an action brought to remedy the injustice that results from a promise not kept."  *Peluso*, 970 A.2d at 533 (Pa. Commw. 2009).  Equitable estoppel is therefore inapplicable here, so Genesis' equitable estoppel claim fails and will be dismissed with prejudice.

### b.  Promissory Estoppel

Genesis' promissory estoppel claim rests on the same facts and allegations as its negligent misrepresentation and equitable estoppel claims.

Promissory estoppel "provides an equitable remedy to enforce a contract-like promise that would be otherwise unenforceable under contract law principles."  *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 239 (Pa. Commw. 2017) (quotations removed).  It "avoid[s] injustice by making enforceable a promise made by one party to the other when the promisee

13

relies on the promise and therefore changes his position to his own detriment." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000).

A party seeking promissory estoppel must show that: "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and, (3) injustice can be avoided only by enforcing the promise." *Id.* These factors are "strictly enforced to guard against the loose application of promissory estoppel." *Cornell Narberth, LLC*, 167 A.3d at 239 (Pa. Commw. 2017).

As it did in support of the other two claims within the section, Genesis alleges that Kaiser's "course of conduct . . . constituted a representation" to Genesis that Kaiser "would continue to pay for Laboratory Testing Services." Genesis alleges it "reasonabl[y] and justifia[ably]" relied on the alleged representation and maintains that Kaiser's alleged repudiation of its payment obligations "violat[es] [] the demands of justice and good conscience."

In its Motion, Kaiser primarily targets the first element of promissory estoppel: It argues that Genesis "has not alleged any facts to suggest that Kaiser itself, through misleading words, conduct or silence, made any sort of promise to [Genesis], including, most fundamentally, that Kaiser would pay for any particular test or would do so at any particular price."

Kaiser is right. Genesis does not aver that Kaiser made it any specific promises regarding the reimbursements—as noted above, it claims that Kaiser's "course of conduct . . . constituted a representation" to Genesis that it would pay. But "an alleged broad and vague implied promise by one to pay another for goods or services provided to a third party, premised on one's obligation to the latter based on past payments, will not support a claim based on promissory

14

estoppel or detrimental reliance." *Health Scan, Ltd. v. Travelers Ins. Co.*, 725 F. Supp. 268, 270

(E.D. Pa. 1989).  The purpose of promissory estoppel is "to enforce a promise even though that

promise is not supported by consideration," *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003,

1006 (Pa. Super. 1997), and here Genesis has not pleaded any specific facts to show that Kaiser

made it such a promise.

Thus, Genesis has not successfully pleaded its claim for promissory estoppel, which will

be dismissed without prejudice.

### D.  Count IV: Alternative Claim for Quantum Meruit/Unjust Enrichment

The final count in Genesis' Complaint, which is styled as a combination of quantum

meruit and unjust enrichment, rests centrally on Genesis' contention that when it performed lab

testing for Kaiser's members, it conferred a benefit on Kaiser, and that Kaiser unjustly retained

that benefit by failing to compensate Genesis.  Genesis therefore seeks restitution in quantum

meruit to the tune of at least $419,356 plus interest.[11]

The Pennsylvania Supreme Court has explained the relationship between the quantum

meruit remedy and an unjust enrichment claim:

> A claim for damages in quantum meruit is fundamentally an equitable claim of
> unjust enrichment in which the party seeking recovery must demonstrate: (1) [the]
> benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by
> defendant; and, (3) acceptance and retention of such benefits under such
> circumstances that it would be inequitable for defendant to retain the benefit
> without payment of value.

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*,

179 A.3d 1093, 1102 (Pa. 2018).  "The application of the doctrine depends on the particular

---

[11] An award in quantum meruit "yields as much as deserved[,] and measures compensation under [an] implied contract to pay compensation as a reasonable value of services rendered."  *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1099 (Pa. 2018).

factual circumstances of the case at issue.  In determining if the doctrine applies, our focus is . . . on whether the defendant has been unjustly enriched."  *Id.*

Here, Genesis avers enough to survive Kaiser's Motion to Dismiss.

### i.   Conferral and Appreciation of a Benefit

Genesis alleges that it conferred a benefit on Kaiser because it "perform[ed] Laboratory Testing Services for [Kaiser]'s subscribers and/or members."  Kaiser argues in response that the benefit Genesis alleges it conferred is "too remote" to qualify for a quantum meruit or unjust-enrichment claim.  Genesis, Kaiser says, "fails to identify any benefit . . . with any level of specificity, that it conferred on Kaiser" and gives "no explanation of how or why its alleged testing services to Kaiser members conferred any sort of benefit upon Kaiser."  But Kaiser demands of Genesis a greater degree of privity and specificity than the law requires.  "*[D]irect* conferral of a benefit is not required*" to maintain an unjust enrichment claim.  *Oxford Fin. LLC v. McLellan*, 2020 WL 1975072, at *3 (E.D. Pa. Apr. 23, 2020) (emphasis added); *see also D.A. Hill Co. v. Clevetrust Realty Invs.*, 573 A.2d 1005, 1009 (Pa. 1990) (an action for unjust enrichment can be maintained even without direct contractual privity).  Here, it is enough at this stage of the proceedings that Genesis has averred it performed services requisitioned by Kaiser's agents, because Kaiser benefits from the provision of services to its members who pay it for membership and whose medical providers it must on some occasions reimburse.

### ii.   Injustice of Retention of Benefit Without Payment

The injustice of the retention of the benefit is the "most critical element" of a claim for unjust enrichment.  *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 917 (Pa. Super. 2017).  Not every receipt of benefit without payment is unfair enough to give rise to a claim for unjust enrichment.  *See D.A. Hill Co. v. Clevetrust Realty Invs.*, 573 A.2d 1005, 1009 (Pa. 1990); *see*

*also Roethlein v. Portnoff L. Assocs., Ltd.*, 81 A.3d 816, 825 (Pa. 2013) (explaining that unjust enrichment requires "circumstances where compensation is reasonably expected"). A "mere failure of performance" is not enough. *D.A. Hill Co.*, 573 A.2d at 1009. But where the enriched party has misled the conferring party in some way, unjust enrichment may arise. *Id.*; *see also Ravin, Inc. v. First City Co.*, 692 A.2d 577, 582 (Pa. Super. 1997).

Here, Genesis avers facts that plausibly allege Kaiser did mislead it. Specifically, Genesis alleges that Kaiser "engaged in a long campaign designed to deprive [Genesis] of thousands of dollars" by "fail[ing] to respond at all" to certain claims or "fabricat[ing]" other "pretextual bas[e]s" for denying them. Genesis alleges further that Kaiser repeatedly raised "contrived and meritless" excuses for refusing to pay. Accepting these allegations as true for the purpose of Kaiser's Motion, Genesis has sufficiently alleged injustice.

Accordingly, Kaiser's Motion will be denied as to Genesis' quantum meruit/unjust enrichment claim.

### III.   CONCLUSION

For these reasons, Kaiser's Motion will be granted in part and denied in part.

An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____

WENDY BEETLESTONE, J.